Filed 5/19/21  P. v. Worthy CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E076125 |
| v. | (Super.Ct.No. FWV17003997) |
| CARMEN NICOLE WORTHY, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Ingrid Adamson Uhler, Judge.  Affirmed.

Allison H. Ting, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Britton B. Lacy, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury convicted defendant and appellant Carmen Nicole Worthy and codefendant John Corey Broyles of first degree murder (Pen. Code,[1] § 187, subd. (a)) for killing Worthy's cousin, Timothy Morris, 18 years earlier. Worthy was sentenced to 25 years to life in prison. Worthy subsequently brought a petition for resentencing under section 1170.95, which was enacted by the Legislature through its passage of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437). The trial court denied the petition without holding an evidentiary hearing based on the record of conviction. Defendant appeals from the trial court's order, arguing she stated a prima facie case for relief, and thus the court erred and violated her due process rights by failing to appoint counsel before denying her petition. We reject these contentions and affirm the trial court's order.

## FACTUAL AND PROCEDURAL HISTORY[2]

A.      FACTUAL BACKGROUND

In March 2000, Worthy was living with her cousin, Timothy Morris. Worthy called Morris's mother (Worthy's aunt) and complained that Morris was "cutting the weed" and had not been "bringing what he's supposed to be bringing." Worthy sounded "[a]gitated" and "aggressive." Worthy's aunt thought the call was "very unusual"

---

[1] All future statutory references are to the Penal Code.

[2] The factual background is taken verbatim from this court's nonpublished opinion from Worthy's direct appeal in case No. E071002. (*People v. Broyles* (Apr. 7, 2020, E071002) [nonpub. opn.] (*Broyles I*).) We granted the People's request to take judicial notice of the record in Worthy's prior appeal in case No. E071002, including the nonpublished opinion filed April 7, 2020.

because she had not heard from Worthy "in a long time." Worthy's aunt "cut [the conversation] real short" because she did not like Worthy's "attitude and her way of talking" and told Worthy that she would talk to Morris.

Around the same time, C.D., who was 15 years old at the time, overheard Worthy say to Broyles something to the effect that she knew someone with "some money coming in" and that she "wanted him dead" and "wanted somebody to do it."

Sometime in the next few days, Broyles left Worthy's apartment with Morris. Later that evening, Broyles entered Worthy's apartment and said he "did it." Worthy responded, " 'Are you for real?' " " 'Oh, my God.' "

Worthy, C.D., and Broyles went outside to Morris's car. Broyles opened the trunk, and Morris was inside. Broyles said he shot Morris in the head using a shampoo bottle as a silencer. Broyles and Worthy's boyfriend also "had to beat [Morris] up to put him in the trunk" because "he didn't die right off the bat." Morris then made a "loud snoring noise," so Broyles told Worthy to go get knives. Worthy returned with two knives and handed one to Broyles. Broyles stabbed Morris several times, including once in the neck like he was trying to "cut off [Morris's] air circulation." C.D. saw Worthy "thrusting" the knife at Morris, but he was not sure whether she stabbed Morris. Morris stopped making noises. Worthy and Broyles then discussed "what they were going to do with the body and how they were . . . going to do it."

Broyles, his brother, and C.D. drove to the mountains to dispose of Morris's body. Broyles parked the car on a dirt road. C.D. tried to help Broyles lift Morris's body from

3

the trunk, but they could not lift it. Broyles and his brother successfully lifted Morris's body from the trunk and threw it down a hill. Broyles asked C.D. to hit Morris's teeth out with a hammer, but C.D. refused. Broyles poured gas on the body and set it on fire. They then left the scene.

B.     PROCEDURAL BACKGROUND

Over 18 years later, in May 2018, a first amended information was filed, charging Broyles and Worthy with first degree murder (§ 187, subd. (a)) for killing Morris. It was also alleged that Broyles personally and intentionally discharged a firearm (§ 12022.53, subd. (c)) in the commission of the murder. A jury convicted Broyles and Worthy as charged and also found true the firearm allegation. The trial court sentenced Worthy to an indeterminate term of 25 years to life for Morris's murder.[3]

While her direct appeal was pending, Worthy filed a petition for resentencing pursuant to section 1170.95, requesting that her murder conviction be vacated based on changes to sections 188 and 189, as amended by Senate Bill 1437, and asking to be resentenced. Worthy requested the appointment of counsel.

---

[3] Broyles was sentenced to an indeterminate term of 25 years to life and a determinate term of 20 years for the firearm enhancement. (*Broyles I*, *supra*, E071002, at p. 4.)

4

At a hearing held on September 20, 2019, with the prosecutor and trial counsel on behalf of Worthy present,[4] the trial court found Worthy was ineligible for relief. The trial court—the same court that had presided over the murder trial—recalled that "this was not an issue of felony murder or natural and probable consequences," and highlighted that "[t]he actual verdict was based on the fact that [Worthy] aided and abetted in the commission of first-degree murder." The court further added, "Those were the jury instructions, as well." The court later reaffirmed, "based on the Court's recollection of the evidence, [Worthy] was convicted as an aider and abetter [*sic*] in the commission of first-degree murder."

After conferring with counsel, the court ultimately determined that Worthy was not eligible for relief under section 1170.95 for two reasons. The court explained, "[Worthy's] case is still pending appeal and the fact that she was convicted as an aider and abetter [*sic*] in the commission of first-degree murder, that this was not felony murder nor a natural probable consequence issue. In review of the jury instructions, the Court did determine that the only jury instruction given to the jurors was that she, in fact, did aid and abet first-degree murder."

---

[4] The court's minute order indicates that Worthy's codefendant's trial counsel was present on behalf of Worthy's trial counsel. In addition, at the September 20, 2019 hearing, the court noted that the defense attorney who was present at the hearing was "standing in for [Worthy's trial counsel], the attorney of record." It is unclear whether Worthy's trial counsel was reappointed or had simply continued to represent Worthy and appear on her behalf given that she was in prison at the time.

On April 7, 2020, we affirmed the judgment in its entirety from Worthy's direct appeal. (See *Broyles I*, *supra*, E071002, at pp. 2, 5-29.)

On September 29, 2020, Worthy filed another petition for resentencing under section 1170.95. The following day, without another hearing, the trial court—again, the same court that had presided over Worthy's murder trial—denied the petition. The court's minute order explains the denial as follows: "[Worthy] is not eligible for resentencing pursuant to PC1170.95 because [Worthy] was found guilty of aiding and abetting and/or part of a conspiracy to commit First Degree premeditated and deliberate murder. Felony murder and the natural probable consequence doctrine did not apply nor was it instructed. This is the second time resentencing Petition has been denied." When the court denied Worthy's section 1170.95 petitions, both Worthy and her trial counsel were notified.

Defendant timely appealed from the court's order denying her second section 1170.95 petition.

**DISCUSSION**

Worthy contends the trial court erred and violated her due process rights when it summarily denied her petition without appointing counsel because her petition stated a prima facie case for relief, and thus her facially compliant petition necessitated the appointment of counsel under the provisions of section 1170.95. Worthy also argues that this court should reverse and remand the matter because the trial court's fundamentally unfair denial of her request for counsel is not amenable to harmless error analysis.

6

A.      SENATE BILL 1437 GENERALLY

Senate Bill 1437, which became effective on January 1, 2019, addresses certain aspects of California law regarding felony murder and the natural and probable consequences doctrine by amending sections 188 and 189.  (*People v. Martinez* (2019) 31 Cal.App.5th 719, 722.)  By amending sections 188 (defining malice) and 189 (defining the degrees of murder), Senate Bill 1437 eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*)) and significantly limited the felony-murder exception to the malice requirement for murder.  (See, e.g., *People v. Rodriguez* (2020) 58 Cal.App.5th 227, 236; *People v. Bascomb* (2020) 55 Cal.App.5th 1077, 1086 (*Bascomb*), review granted Mar. 10, 2021, S266652.)

New section 189, subdivision (e), provides that a participant in the perpetration of qualifying felonies is liable for felony murder only if the person:  (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor; or (3) the person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in section 190.2, subdivision (d).  (See *Gentile*, *supra*, 10 Cal.5th at p. 842.)  New section 188 amended the natural and probable consequences doctrine by adding subdivision (a)(3) to section 188, which states that " '[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' "  (See *Gentile*, at p. 843.)

7

Senate Bill 1437 also added section 1170.95, which created a procedure whereby persons convicted of murder under a now invalid felony-murder or natural and probable consequences theory may petition for vacation of their convictions and resentencing. (See *Gentile*, *supra*, 10 Cal.5th at pp. 858-859.) The petition must include a declaration the petitioner is eligible for relief under section 1170.95 and a statement whether the petitioner requests the appointment of counsel. (§ 1170.95, subd. (b)(1); see *People v. Verdugo* (2020) 44 Cal.App.5th 320, 326-327 (*Verdugo*), review granted Mar. 18, 2020, S260493;[5] *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1139-1140 (*Lewis*), review granted Mar. 18, 2020, S260598.)

A defendant is eligible for relief under section 1170.95 if he or she meets three conditions: (1) he or she must have been charged with murder by means of a charging document that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine, (2) must have been convicted of first or second degree murder, and (3) he or she could no longer be convicted of first or second degree murder due to changes to sections 188 and 189 effectuated by Senate Bill 1437. (§ 1170.95, subd. (a)(1)-(3).) A person may be convicted of murder, even after the 2019 changes to sections 188 and 189, if he or she "was the actual killer" or "directly aided [and] abetted" the actual killer, and who acted with the "intent to kill." (§ 189, subd. (e).)

---

[5] Under California Rules of Court, rule 8.1115, we may rely on appellate cases while review is pending as persuasive authority. (Cal. Rules of Court, rule 8.1115(e)(1), eff. July 1, 2016.)

Courts of Appeal have interpreted section 1170.95 to provide for a multi-step review process of a petition by the trial court: an initial review to determine the petition's facial sufficiency; a prebriefing, " 'first prima facie review' " to preliminarily determine whether the petitioner is statutorily eligible for relief as a matter of law; and a second, postbriefing prima facie review to determine whether the petitioner has made a prima facie case that he or she is entitled to relief. (*People v. Tarkington* (2020) 49 Cal.App.5th 892, 897-898 (*Tarkington*), review granted Aug. 12, 2020, S263219; *People v. Cornelius* (2020) 44 Cal.App.5th 54, 57-58 (*Cornelius*), review granted Mar. 18, 2020, S260410; *Verdugo*, *supra*, 44 Cal.App.5th at pp. 326-328; *People v. Drayton* (2020) 47 Cal.App.5th 965, 974-975 (*Drayton*).) A " 'prima facie showing is one that is sufficient to support the position of the party in question.' [Citation.]" (*Lewis*, *supra*, 43 Cal.App.5th at p. 1137.)

When conducting the first prima facie review, the trial court must determine, based upon its review of readily ascertainable information in the record of conviction and the court file, whether the petitioner is statutorily eligible for relief as a matter of law, i.e., whether he or she was convicted of a qualifying crime, pursuant to the natural and probable consequences doctrine or a felony-murder theory. (*Tarkington*, *supra*, 49 Cal.App.5th at pp. at pp. 897-898; *Verdugo*, *supra*, 44 Cal.App.5th at pp. 329-330.) If it is clear from the record of conviction that the petitioner cannot establish eligibility as a matter of law, the trial court may summarily deny the petition without appointing counsel. (*Tarkington*, at pp. 898, 900-902; *People v. Torres* (2020) 46 Cal.App.5th 1168,

9

1173 (*Torres*), review granted June 24, 2020, S262011; *Verdugo*, at pp. 332-333; *Lewis*, *supra*, 43 Cal.App.5th at pp. 1139-1140.) The court may review the complaint, the information or indictment, the verdict form or the documentation for a negotiated plea, and the abstract of judgment. (*Verdugo*, at pp. 329-330.) A Court of Appeal opinion is part of the defendant's record of conviction (*id*. at p. 333; *Lewis*, *supra*, 43 Cal.App.5th at pp. 1137-1138 [in determining the sufficiency of a section 1170.95 petition, the court may review the record of conviction, which includes the opinion in a defendant's direct appeal]; *Bascomb*, *supra*, 55 Cal.App.5th 1080-1081, 1086 [same]; *People v. Law* (2020) 48 Cal.App.5th 811, 820-821 (*Law*) [same], review granted July 8, 2020, S262490), as are jury instructions (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1055 (*Soto*), review granted Sept. 23, 2020, S263939).

If, however, the petitioner's ineligibility is not established as a matter of law, the court must appoint counsel and permit briefing to determine whether the petitioner has made a prima facie showing he or she is entitled to relief. (*Verdugo*, *supra*, 44 Cal.App.5th at p. 330; *Tarkington*, *supra*, 49 Cal.App.5th at p. 898.) If the petitioner makes such a showing, the court must issue an order to show cause and conduct a hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1170.95, subds. (c), (d); *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1166 (*Nguyen*).) At that hearing, the prosecution has the burden to prove, beyond a reasonable doubt, that the defendant is ineligible for resentencing. (§ 1170.95, subd. (d)(3).)

10

B.    ANALYSIS

Here, the trial court correctly concluded that Worthy was statutorily ineligible for relief as a matter of law based on the record of conviction.  To be eligible for resentencing, Worthy was required to show that she "could not be convicted of first or second degree murder because of changes to Section 188 or 189" made by Senate Bill 1437.  (§ 1170.95, subd. (a)(3).)  The record of conviction conclusively demonstrates that Worthy cannot make such a showing.  "[P]otential relief under section 1170.95 extends only to those convicted of murder by operation of the natural and probable consequence doctrine or of felony murder.  [Citation.]"  (*Soto*, *supra*, 51 Cal.App.5th at p. 1056; see *People v. Lee* (2020) 49 Cal.App.5th 254, 263-265, review granted July 15, 2020, S262459.)  Worthy's jury was not instructed on either the natural and probable consequences doctrine or the felony-murder rule.  Therefore, she could not have been convicted based on either of these theories.  (*Soto*, at p. 1055 [trial court may rely on jury instructions when determining whether petitioner has made a prima facie showing of entitlement to relief]; *People v. Edwards* (2020) 48 Cal.App.5th 666, 674 (*Edwards*), review granted July 8, 2020, S262481 [where jury instructions showed petitioner was not convicted under felony-murder rule or natural and probable consequences theory, he could not meet the statutory prerequisites for filing a § 1170.95 petition]; *Lewis*, *supra*, 43 Cal.App.5th at p. 1138 [where court file shows petitioner was convicted of murder without instruction or argument on the felony-murder rule or the natural and probable consequences doctrine, summary denial would be appropriate].)

11

Worthy contends that trial court was required to accept the petition's allegations as true during the prima facie stage, including her declaration in the petition that she was convicted under applicable theories of murder. We agree: as *Verdugo* explained, at the eligibility stage, the court must make all factual inferences in the petitioner's favor. (*Verdugo*, *supra*, 44 Cal.App.5th at p. 329; *Tarkington*, *supra*, 49 Cal.App.5th at p. 898.) But here, Worthy's ineligibility is apparent as a matter of law, based on the record of conviction, including the jury instructions and the verdict, and does not turn on the resolution of disputed facts.

Nor are we persuaded that the trial court was required to appoint counsel as soon as Worthy filed a facially sufficient petition. Courts of Appeal have held that a trial court may summarily deny a petition without appointing counsel if the record shows the defendant is ineligible as a matter of law. (See *Tarkington*, *supra*, 49 Cal.App.5th at pp. 901-902; *Torres*, *supra*, 46 Cal.App.5th at p. 1173; *Verdugo*, *supra*, 44 Cal.App.5th at pp. 332-333; *Lewis*, *supra*, 43 Cal.App.5th at pp. 1139-1140; *Cornelius*, *supra*, 44 Cal.App.5th at p. 58.) Such was the case here.

Relying on *People v. Cooper* (2020) 54 Cal.App.5th 106 (*Cooper*), review granted November 10, 2020, S264684, Worthy argues that because her petition was facially compliant, section 1170.95, subdivision (c), required the court to appoint counsel for her. The court in *Cooper* disagreed with *Verdugo* and *Lewis* that section 1170.95, subdivision (c), contemplates two separate steps and held a petitioner is entitled to counsel upon the filing of a facially sufficient petition for relief that requests counsel be

12

appointed.  (*Cooper*, at pp. 121-123.)  In the *Cooper* court's view, section 1170.95, subdivision (c)'s first sentence is simply "a topic sentence summarizing the trial court's task before issuing an order to show cause, and the following sentences . . . specify the procedure in undertaking that task," meaning there is only one prima facie review before an order to show cause issues.  (*Cooper*, at p. 118.)  Thus, once a petitioner files a facially sufficient petition requesting counsel, the trial court must appoint counsel before performing any review under section 1170.95, subdivision (c).  (*Cooper*, at p. 123.)

We do not find persuasive the *Cooper* court's interpretation of section 1170.95, subdivision (c).  Unless we receive different instructions from the Supreme Court, we adhere to the analysis set forth in *Verdugo* and the cases that have followed it.[6]

The statutory right to counsel is not triggered merely by the filing of a petition that checks the correct boxes, where the petition's assertions are conclusively refuted by the record.  Worthy's petition averred that she was convicted of murder pursuant to the felony-murder rule and the natural and probable consequences doctrine.  As explained, this assertion is demonstrably incorrect.  She also averred that she did not, with the intent to kill, aid and abet the actual killer in the commission of the murder.  Again, the record—i.e., the instructions and the verdicts—belies this assertion as a matter of law.  The trial court was not obliged to credit averments in the petition that are conclusively

---

[6] The Supreme Court will likely resolve this disagreement in *Lewis*, in which briefing and argument have been limited to the following issues:  "(1) May superior courts consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief under Penal Code section 1170.95? (2) When does the right to appointed counsel arise under Penal Code section 1170.95, subdivision (c)?"  (*People v. Lewis* (Mar. 18, 2020, S260598) [2020 Cal.Lexis 1946].)

refuted by the record of conviction. (See, e.g., *Drayton*, *supra*, 47 Cal.App.5th at p. 968 [in assessing whether a petitioner has established a prima facie case, trial court "should accept the assertions in the petition as true unless facts in the record conclusively refute them as a matter of law"]; *Nguyen*, *supra*, 53 Cal.App.5th at pp. 1165-1166.)

Even under *Cooper*, *supra*, 54 Cal.App.5th 106, review of the record of conviction is proper on appeal to determine whether a petitioner is ineligible for relief as a matter of law. The *Cooper* court held, although a petitioner has a statutory right to counsel upon filing a facially sufficient section 1170.95 petition, the violation of that right is not structural error, and thus not reversible per se. As the same panel that decided *Cooper* explained in *People v. Daniel* (2020) 57 Cal.App.5th 666, 675, "[T]he failure to appoint counsel upon the filing of a facially sufficient petition under section 1170.95 is susceptible to review for prejudice. [Citation.] And harmlessness is established if the record 'conclusively demonstrate[s] that [the petitioner] was ineligible for relief as a matter of law.' "[7] (Accord, *Law*, *supra*, 48 Cal.App.5th at p. 826 [any error in failing to appoint counsel was harmless because counsel would not have been able to demonstrate

[7] The *Daniel* court held, to demonstrate prejudice, a petitioner has the burden of establishing it is reasonably probable that, if he or she had been afforded assistance of counsel, the petition would not have been summarily denied without an evidentiary hearing, the standard for state law error established in *People v. Watson* (1956) 46 Cal.2d 818, 836. (*Daniel*, *supra*, 57 Cal.App.5th at p. 676.) There is no federal constitutional right to counsel under section 1170.95, subdivision (c). (*Daniel*, at p. 675 ["legislation 'intended to give inmates serving otherwise final sentences the benefit of ameliorative changes to applicable sentencing laws,' including Senate Bill No. 1437, does not implicate the Sixth Amendment"]; accord, *People v. Lopez* (2019) 38 Cal.App.5th 1087, 1114-1115, review granted Nov. 13, 2019, S258175 [the retroactive relief afforded by Senate Bill 1437 " 'is not subject to Sixth Amendment analysis' "]; see *People v. Perez* (2018) 4 Cal.5th 1055, 1063-1064 (*Perez*).)

petitioner was eligible for resentencing]; *Edwards*, *supra*, 48 Cal.App.5th at p. 674 [any error in failing to appoint counsel was harmless because petitioner did not fall within the provisions of section 1170.95 as a matter of law].) We reject Worthy's attempts to persuade us that the harmless error analysis should not apply to section 1170.95 petitions.

In this case, as previously explained, presuming the trial court erred in failing to appoint counsel to represent her, any error was harmless because counsel would not have been able to demonstrate petitioner was eligible for resentencing. (*Law*, *supra*, 48 Cal.App.5th at p. 826.)

We also reject Worthy's due process claim. Where legislation gives inmates serving otherwise final sentences the benefit of ameliorative changes to applicable sentencing laws, the Sixth Amendment is not necessarily implicated. (See *Perez*, *supra*, 4 Cal.5th at pp. 1063-1064; *People v. Howard* (2020) 50 Cal.App.5th 727, 740 ["The retroactive relief provided by section 1170.95 reflects an act of lenity by the Legislature" and does not implicate a defendant's Sixth Amendment rights]; *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1156-1157 ["the retroactive relief . . . afforded by Senate Bill 1437 is not subject to Sixth Amendment analysis" and defendants had no right to a jury trial on petition].)

We acknowledge that "if a postconviction petition by an incarcerated defendant 'attacking the validity of a judgment states a prima facie case leading to issuance of an order to show cause, the appointment of counsel is demanded by due process concerns.' [Citations.]" (*People v. Rouse* (2016) 245 Cal.App.4th 292, 300; *People v. Fryhaat*

(2019) 35 Cal.App.5th 969, 980-981.) "That right is a limited one, however, and only kicks in once the defendant makes a prima facie showing of entitlement of postconviction relief." (*People v. Cole* (2020) 52 Cal.App.5th 1023, 1032, review granted Oct. 14. 2020, S264278.) Here, Worthy has not moved past the initial eligibility stage; she has not made a prima facie case requiring issuance of an order to show cause. Accordingly, she had no due process right to counsel. And, because Worthy is categorically ineligible for relief, she could have had no liberty interest in the appointment of counsel. (See *Tarkington*, *supra*, 49 Cal.App.5th at pp. 907-908.)

Based on the foregoing reasons, we conclude the petition was properly denied without appointment of counsel or an evidentiary hearing. (See, e.g., *Lewis*, *supra*, 43 Cal.App.5th at pp. 1138-1139 [it would be a " 'gross misuse of judicial resources' " to issue an order to show cause or appoint counsel where a review of the court record established ineligibility as a matter of law].)

## DISPOSITION

The order denying Worthy's resentencing petition under section 1170.95 is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____

J.

We concur:

RAMIREZ _____

P. J.

SLOUGH _____

J.

16